UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ROBERT BRAY, | Case No. 3:11-cv-00448-MMD-WGC |
| Petitioner, | ORDER |
| v. | |
| JACK PALMER, *et al.*, | |
| Respondents. | |

This action is a *pro se* petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, by a Nevada state prisoner. This matter comes before the Court on the merits of the remaining grounds of the petition.

I.    **PROCEDURAL HISTORY**

Petitioner was arrested in Reno, Nevada, in August of 1997 and charged with three counts of armed robbery and three counts of ex-felon in possession of a firearm. (Exh. 59, at p. 1.[1]) Petitioner invoked his right to a trial within sixty (60) days of arraignment, pursuant to Nevada Revised Statute § 178.556(2). Subsequently, newly appointed counsel, Robert Bell, requested a continuance and petitioner waived his right to a trial within sixty (60) days of his arraignment. (Exh. 14.) The state district court set trial for January 26, 1998. (*Id.*)

_____

[1]The exhibits referenced in this order are found in the Court's record at dkt. nos. 13-17.

1    On October 15, 1997, petitioner escaped from the Washoe County Jail. (Exh.
2 59.) As a result, the State of Nevada filed a criminal complaint charging petitioner with
3 escape and the Reno Justice Court issued an arrest warrant. (*Id.*) A hold request was
4 issued on the escape charge on October 15, 1997. (*Id.*)

5    On October 22, 1997, petitioner was arrested in San Diego, California, for felony
6 offenses committed following petitioner's escape from the Washoe County Jail. (Exh.
7 59, at p. 2.) In July of 1998, a California state court sentenced petitioner to serve eleven
8 (11) years in prison in California. (*Id.*) When petitioner failed to appear in state district
9 court in Nevada for his January 1998 trial on the pending armed robbery and
10 possession of weapon charges, the state district court issued a bench warrant for
11 petitioner's arrest. (Exh. 20.) Thereafter, on March 3, 1999, petitioner was formally
12 notified under the Interstate Agreement on Detainers (IAD) that Nevada authorities
13 lodged a detainer against him regarding the robbery and ex-felon charges. (Exh. 59, at
14 p. 3.) Petitioner took no action to invoke his rights under the IAD after he received this
15 notice. (*Id.*, at p. 4.)

16    On September 17, 2007, while serving his California sentence, petitioner
17 received a notice pursuant to the IAD addressing all of the pending, untried robbery
18 charges, weapons possession charge, and escape charge. Petitioner formally
19 requested a final disposition of the listed charges. Although petitioner had received prior
20 IAD notices related to these charges and interacted with California officials regarding
21 those notices, the 2007 request was the first time petitioner notified the Washoe County
22 District Attorney's Office and the state district court of his desire to bring the pending,
23 untried charges to final disposition. (Exh. 59, at pp. 3-5.)

24    Petitioner returned to Washoe County in autumn of 2007, and the state district
25 court appointed an attorney from the Washoe County Alternate Public Defender's office,
26 Carter Conway, to represent petitioner. Conway testified at the evidentiary hearing on
27 petitioner's state habeas petition that he investigated petitioner's case with respect to
28 the possibility of filing a motion to dismiss based on violations of the IAD. He testified

1    that he advised petitioner of his conclusion that such a motion was not likely to succeed.

2    Both Conway and the petitioner testified that with petitioner's consent, counsel began

3    negotiating with the State to reach a final resolution to the charges. (Exh. 59, at pp. 5-7.

4          Pursuant to negotiations with the State, on April 3, 2008, petitioner entered a

5    guilty plea to a single count of armed robbery. (Exh. 23, 24, 25 and 59, at pp. 7-8.) On

6    May 12, 2008, the state district court entered judgment and sentenced petitioner to two

7    consecutive terms of 36 to 120 months for the armed robbery and deadly weapon

8    enhancement. (Exh. 27.) Petitioner did not pursue a direct appeal.

9          On April 1, 2009, petitioner filed a state post-conviction habeas petition. (Exh.

10   30.) He asserted the following claims: (1) ineffective assistance of counsel; (2) violation

11   of his rights to a speedy trial and due process; and (3) violation of his Fifth, Sixth and

12   Fourteenth Amendment rights based on the State's failure to comply with the IAD.  (Id.)

13   The state district court appointed counsel to represent petitioner during his post-

14   conviction proceedings, and counsel filed a supplemental petition. (Exh. 32 & 39.) The

15   supplemental petition asserted violations of the IAD had violated his constitutional rights

16   to a speedy trial and due process and that he was denied his constitutional right to

17   effective assistance of counsel. (Exh. 39.)

18          The state district court held an evidentiary hearing on petitioner's post-conviction

19   habeas petition. (Exh. 48.) On July 30, 2010, the state district court filed findings of fact,

20   conclusions of law, and an order denying petitioner's post-conviction habeas petition.

21   (Exh. 59.) Petitioner appealed the denial of his petition. (Exh. 62.) In an order filed June

22   8, 2011, the Nevada Supreme Court affirmed the denial of the post-conviction habeas

23   petition. (Exh. 83.) The Nevada Supreme Court determined that petitioner's IAD claims

24   were procedurally defaulted and that the denial of relief for his ineffective assistance of

25   counsel claims was supported by substantial evidence. (Id.)

26          Petitioner dispatched this federal habeas petition to this Court on June 20, 2011,

27   which contains three grounds for relief. (Dkt. no. 7.) Respondents moved to dismiss the

28   petition. (Dkt. no. 12.) By order filed March 29, 2012, this Court granted the motion to

1   dismiss in part, finding that Ground 1(a) of the petition is unexhausted, and that

2   Grounds 2 and 3 of the petition are procedurally barred. (Dkt. no. 31.) The Court gave

3   petitioner three options for proceeding with respect to his exhausted claim: (1)

4   abandoning his unexhausted claim; (2) dismissing the entire petition without prejudice;

5   or (3) seeking a stay to return to state court to exhaust the claim. (Dkt. no. 31, at pp. 8-

6   9.) In response, petitioner filed a motion for reconsideration. (Dkt. no. 33.) On June 5,

7   2012, the Court denied petitioner's motion for reconsideration and reiterated petitioner's

8   three options for dealing with this unexhausted claim. (Dkt. no. 35.) Petitioner elected to

9   abandon unexhausted Ground 1(a). (Dkt no. 36.) Respondents have filed an answer to

10  the remaining portions of the petition, Grounds 1(b) and 1(c). (Dkt. no. 40.) Petitioner

11  filed a reply to the answer on August 21, 2012. (Dkt. no. 42.)

12  **II.     FEDERAL HABEAS CORPUS STANDARDS**

13          The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. §

14  2254(d), provides the legal standard for the Court's consideration of this habeas

15  petition:

16          An application for a writ of habeas corpus on behalf of a person in custody
            pursuant to the judgment of a State court shall not be granted with respect
17          to any claim that was adjudicated on the merits in State court proceedings
            unless the adjudication of the claim –
18
19          (1) resulted in a decision that was contrary to, or involved an
            unreasonable application of, clearly established Federal law, as
20          determined by the Supreme Court of the United States; or

21          (2) resulted in a decision that was based on an unreasonable
            determination of the facts in light of the evidence presented in the State
22          court proceeding.

23          The AEDPA "modified a federal habeas court's role in reviewing state prisoner

24  applications in order to prevent federal habeas 'retrials' and to ensure that state-court

25  convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S.

26  685, 693-694 (2002). A state court decision is contrary to clearly established Supreme

27  Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a

28  rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the

state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (*quoting Williams v. Taylor,* 529 U.S. 362, 405-406 (2000) and *citing Bell v. Cone,* 535 U.S. 685, 694 (2002)). The formidable standard set forth in section 2254(d) reflects the view that habeas corpus is "'a guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. ___, ___, 131 S.Ct. 770, 786 (2011) (*quoting Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. at 75 (*quoting Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than merely incorrect or erroneous; the state court's application of clearly established federal law must be objectively unreasonable. *Id.* (*quoting Williams*, 529 U.S. at 409). In determining whether a state court decision is contrary to, or an unreasonable application of federal law, this Court looks to the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001).

In a federal habeas proceeding, "a determination of a factual issue made by a state court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the burden set in § 2254(d) and (e) on the record that was before the state court. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1400 (2011).

///

1    III.    **DISCUSSION**

2          In Ground 1 of the petition, petitioner alleges the following violations of his right to

3    the effective assistance of counsel: (a) counsel Robert Bell failed to investigate,

4    interview, or seek the deposition of alibi witnesses; (b) counsel Bell failed to activate or

5    otherwise facilitate the detainer notification that petitioner received in March 1999 in

6    order to resolve the untried armed robbery charges against him; and (c) subsequent

7    counsel Cotter Conway failed to file a pretrial motion to dismiss the escape and armed

8    robbery charges for failure to timely try petitioner pursuant to the IAD. (Dkt. no. 7, at p.

9    3.) Ground 1(a) is unexhausted and petitioner has abandoned that claim. Thus, the

10   remaining grounds for relief are Grounds 1(b) and 1(c), which both allege the ineffective

11   assistance of counsel.

12         A.     **Ineffective Assistance of Counsel Standard**

13         Ineffective assistance of counsel claims are governed by the two-part test

14   announced in *Strickland v. Washington,* 466 U.S. 668 (1984). In *Strickland,* the

15   Supreme Court held that a petitioner claiming ineffective assistance of counsel has the

16   burden of demonstrating that (1) counsel's performance was unreasonably deficient,

17   and (2) that the deficient performance prejudiced the defense. *Williams v. Taylor,* 529

18   U.S. 362, 390-391 (2000) (*citing Strickland,* 466 U.S. at 687). To establish

19   ineffectiveness, the defendant must show that counsel's representation fell below an

20   objective standard of reasonableness. *Id.* To establish prejudice, the defendant must

21   show that there is a reasonable probability that, but for counsel's unprofessional errors,

22   the result of the proceeding would have been different. *Id.* A reasonable probability is

23   "probability sufficient to undermine confidence in the outcome." *Id.* Additionally, any

24   review of the attorney's performance must be "highly deferential" and must adopt

25   counsel's perspective at the time of the challenged conduct, in order to avoid the

26   distorting effects of hindsight. *Strickland,* 466 U.S. at 689. It is the petitioner's burden to

27   overcome the presumption that counsel's actions might be considered sound trial

28   strategy. *Id.*

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an 'objective standard of reasonableness,'. . . 'under prevailing professional norms.'" *Rompilla v. Beard,* 545 U.S. 374, 380 (2005) (quotations omitted). If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of the *Strickland* standard. *See Yarborough v. Gentry,* 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

The United States Supreme Court has described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011) (*quoting Knowles v. Mirzayance*, 556 U.S. 111, 112-113, 129 S.Ct. 1411, 1413 (2009)). In *Cullen v. Pinholster*, the Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance . . . . through the 'deferential lens of § 2254(d).'" *Id.* at 1403 (internal citations omitted). Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits. *Id.* at 1398-1401. The United States Supreme Court has specifically reaffirmed the extensive deference owed to a state court's decision regarding claims of ineffective assistance of counsel:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.* at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at ___, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at ___, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*///*

1   *Harrington v. Richter*, 131 S.Ct. at 788. "A court considering a claim of ineffective

2   assistance of counsel must apply a 'strong presumption' that counsel's representation

3   was within the 'wide range' of reasonable professional assistance." *Id.* at 787 (*quoting*

4   *Strickland*, 466 U.S. at 689). "The question is whether an attorney's representation

5   amounted to incompetence under prevailing professional norms, not whether it deviated

6   from best practices or most common custom." *Id.* (internal quotations and citations

7   omitted).

8        **B.    Ground 1(b)**

9        Petitioner alleges that his attorney, Robert Bell, was ineffective because he failed

10  to activate or otherwise facilitate the detainer notification that petitioner received in

11  March 1999, in order to resolve the untried armed robbery charges. Bell was appointed

12  to represent petitioner in the underlying criminal matter in Nevada. (Exh. 14, at p. 1.)

13  The state district court found that petitioner failed to provide evidence to support his

14  ineffective assistance of counsel claim. (Exh. 59, at pp. 3-4.) Specifically, the state

15  district court ruled: "Insofar as Bray alleged that Bell was ineffective because he failed to

16  invoke Bray's rights under the IAD, or move to dismiss based on a violation of the IAD,

17  Bray failed to present any evidence proving or tending to prove that this omission was

18  objectively unreasonable or prejudicial under *Strickland*." (Exh. 59, at p. 4, n.3.) On

19  appeal, the Nevada Supreme Court affirmed the denial of relief, stating that "the record

20  reveals that the district court's factual findings are supported by substantial evidence

21  and are not clearly wrong [a]nd Bray has not demonstrated that the district court erred

22  as a matter of law." (Exh. 83, at p. 3.) The factual findings of the state court are

23  presumed correct. 28 U.S.C. § 2254(e)(1). Conclusory allegations will not overcome the

24  presumption that the state court's findings are correct. *Bragg v. Galaza*, 242 F.3d 1082,

25  1087 (9th Cir. 2000). Petitioner has failed to demonstrate that Bell's performance was

26  deficient or that he was prejudiced under *Strickland*. Petitioner has failed to meet his

27  burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved

28  an unreasonable application of, clearly established federal law, as determined by the

1   United States Supreme Court, or that the ruling was based on an unreasonable
2   determination of the facts in light of the evidence presented in the state court
3   proceeding.  Federal habeas relief is denied as to Ground 1(b) of the petition.

4        **C.    Ground 1(c)**

5        Petitioner alleges that subsequent counsel, Cotter Conway, failed to file a pretrial
6   motion to dismiss the escape and armed robbery charges for failure to timely try
7   petitioner pursuant to the IAD.

8        In order to initiate the protections of the Interstate Agreement on Detainers, the
9   inmate must provide notice of his desire for a formal resolution of the outstanding
10  charges to the prosecuting agency and the appropriate court in the sending state. *Fex v.*
11  *Michigan*, 507 U.S. 43 (1993); *U.S. v. Johnson*, 196 F.3d 1000, 1002 (9th Cir. 1999)
12  (Under *Fex*, it does not matter what the petitioner may or may not have done in an
13  attempt to cause delivery or how much or little delay there is in delivery); *see also U.S.*
14  *v. Espinoza*, 866 F.2d 1067, 1070 (9th Cir. 1988) (finding counsel was not ineffective for
15  failing to raise IAD as a defense where inmate did not satisfy the requirements for
16  initiating the IAD). In *Fex*, the United States Supreme Court recognized that the
17  protections provided for in the IAD are not triggered until the actual delivery of the
18  request for formal resolution of the outstanding charges to the prosecuting agency and
19  the appropriate court. 507 U.S. at 47 ("Respondent argues that no one can have
20  'caused something to be delivered' unless delivery in fact occurs. That is self-evidently
21  true, and so we must reject petitioner's contention that prisoner's transmittal of an IAD
22  request to the prison authorities commences the 180-day period even if the request gets
23  lost in the mail and is never delivered to the receiving State . . . .").

24       In the instant case, the state district court found that petitioner's claim that
25  Conway was ineffective for not pursuing a motion to dismiss under a theory based upon
26  a violation of the IAD lacked merit. (Exh. 59, at p. 8.) The state district court's order
27  denying relief made express factual findings regarding the sequence of events that
28  occurred between petitioner's escape from the Washoe County Jail and his return to

9

1  Nevada after an extended period of incarceration in California on separate unrelated

2  charges. (Exh. 59, at pp. 2-5.) The court found that: (1) petitioner "took no action" when

3  he initially received the notice of detainer on the armed robbery and ex-felon in

4  possession of a firearm charges in March 1999, and "[h]is testimony to the contrary is

5  not credible"; (2) petitioner refused to sign the form requesting a formal disposition of his

6  escape charge when he was notified of the detainer lodged on the escape charge in

7  August 2004; (3) the letters drafted by attorney Bell did not invoke petitioner's rights

8  under the IAD; and (4) the first time that petitioner provided notice of his desire for a

9  formal resolution of the pending Nevada charges to the Washoe County District

10 Attorney's Office and the state district court, thereby invoking the protections of the IAD,

11 was September 17, 2007. (Exh. 59, at pp. 4-6.)

12       The state district court also made express factual findings regarding the efforts

13 made by Conway in investigating whether a violation of the IAD occurred. (Exh. 59, at

14 pp. 5-6.) In particular, the court's findings reference Conway's efforts to obtain and

15 review documentation from the California prisons and research the law pertaining to the

16 IAD. (Id.) The court found that Conway's decision not to file a motion to dismiss based

17 on an IAD violation was based on his conclusion "that a motion to dismiss under the IAD

18 would not be successful." (Id., at p. 6.)

19       As a result of these factual findings, the state district court concluded that

20 counsel's "failure to file the motion to dismiss, predicated on an IAD violation, was not

21 shown to be objectively unreasonable under prevailing professional norms. (Exh. 59, at

22 p. 6.) The state district court further found that petitioner suffered no prejudice as a

23 result of Conway's decision not to file the motion to dismiss because "there was no

24 reasonable probability that the motion to dismiss would have been granted." (Id.) On

25 appeal, the Nevada Supreme Court concluded: "Our review of the record reveals that

26 the district court's factual findings are supported by the substantial evidence and are not

27 clearly wrong. And Bray has not demonstrated that the district court erred as a matter of

28 law." (Exh. 83, at p. 3.) The factual findings of the state court are presumed correct. 28

1    U.S.C. § 2254(e)(1). Conclusory allegations will not overcome the presumption that the

2    state court's findings are correct. *Bragg*, 242 F.3d at 1087. There is no evidence that

3    prior to 2007, the Washoe County District Attorney's Office and the state district court

4    received a formal request for resolution of the charges from petitioner that would have

5    triggered the protections of the IAD under *Fex v. Michigan*, 507 U.S. at 47. Thus,

6    petitioner has not shown that a motion to dismiss based on an IAD violation would have

7    been successful. Petitioner has failed to demonstrate that Conway's performance was

8    deficient or that he was prejudiced under *Strickland*. Petitioner has failed to meet his

9    burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved

10   an unreasonable application of, clearly established federal law, as determined by the

11   United States Supreme Court, or that the ruling was based on an unreasonable

12   determination of the facts in light of the evidence presented in the state court

13   proceeding. Federal habeas relief is denied as to Ground 1(c) of the petition.

14   **IV.   CERTIFICATE OF APPEALABILITY**

15          District courts are required to rule on the certificate of appealability in the order

16   disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a

17   notice of appeal and request for certificate of appealability to be filed. Rule 11(a). In

18   order to proceed with his appeal, petitioner must receive a certificate of appealability. 28

19   U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski*, 435 F.3d 946,

20   950-951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir.

21   2001). Generally, a petitioner must make "a substantial showing of the denial of a

22   constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2);

23   *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that

24   reasonable jurists would find the district court's assessment of the constitutional claims

25   debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484). In order to meet this threshold

26   inquiry, the petitioner has the burden of demonstrating that the issues are debatable

27   among jurists of reason; that a court could resolve the issues differently; or that the

28   questions are adequate to deserve encouragement to proceed further. *Id.* In this case,

1   no reasonable jurist would find this Court's denial of the petition debatable or wrong.

2   The Court therefore denies petitioner a certificate of appealability.

3   **V.      CONCLUSION**

4           It is therefore ordered that petition for a writ of habeas corpus is denied in its

5   entirety.

6           It is further ordered that petitioner is denied a certificate of appealability.

7           It is further ordered that the Clerk of Court shall enter judgment accordingly.

8

9           DATED THIS 14th day of July 2014.

10

11                                                            MIRANDA M. DU
                                                              UNITED STATES DISTRICT JUDGE
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28